UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

UNITED STATES OF AMERICA          :

    - v. -                                                   :            08 Cr. 124 (DLC)

JOSEPH JORDAN,                              :

              Defendant.           :

------------------------------------------------------x

**DEFENDANT JOSEPH JORDAN'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO
SUPPRESS POST-ARREST STATEMENTS**

                                          LEONARD F. JOY, ESQ.
                                          Federal Defenders of New York
                                          Attorney for Defendant
                                          **JOSEPH JORDAN**
                                          52 Duane Street - 10th Floor
                                          New York, New York 10007
                                          Tel.: (212) 417-8764

                                          **FIONA DOHERTY, ESQ.**
                                          Of Counsel

TO:    MICHAEL J. GARCIA, ESQ.
        United States Attorney
        Southern District of New York
        One. St. Andrew's Plaza
        New York, New York 10007
        Attn:  **HOWARD MASTER, ESQ.**
                Assistant United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------x

UNITED STATES OF AMERICA          :

   - v. -                                   :        08 Cr. 124 (DLC)

JOSEPH JORDAN,                           :

         Defendant.              :

----------------------------------------------------x

### DEFENDANT JOSEPH JORDAN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO SUPPRESS POST-ARREST STATEMENTS

The defendant, Joseph Jordan, hereby moves under Federal Rules of Criminal Procedure 12(b)(3) and 41(h) to suppress post-arrest statements elicited from him in violation of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and the Fifth and Sixth Amendments to the United States Constitution. In particular, Mr. Jordan moves to suppress statements that he made on or about January 11, 2008, following his arrest in this case.[1]

### STATEMENT OF FACTS

Mr. Jordan was originally presented on an indictment with three counts: (1) one count of making threatening communications in violation of 18 U.S.C. § 875(c); (2) one count of making threats against an internationally protected person in violation of 18 U.S.C. § 878; and (3) one count of interstate stalking in violation of 18 U.S.C. § 2261A(2). See Indictment. On or about May 1, 2008, a grand jury returned a superseding indictment, which contained these three counts

---

[1] The defense was also provided with a copy of an FBI report, dated March 3, 2008, recounting statements that Mr. Jordan allegedly made on March 3, 2008 during transport to federal custody. The defense understands that the Government is not intending to introduce any of these statements in its case-in-chief at trial.

and seven additional counts: (1) three counts of mail fraud in violation of 18 U.S.C. § 1341; (2) two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A; (3) one count of access device fraud in violation of 18 U.S.C. § 1029(a)(5); and (4) one count of fraudulently possessing access devices in violation of 18 U.S.C. § 1029(a)(3). See Superseding Indictment.

Mr. Jordan had first been arrested on January 11, 2008 by two agents with the Federal Bureau of Investigation (the "FBI") and a detective with the New York City Police Department (the "NYPD"). See Doherty Affirmation ¶ 3. He was arrested in the vicinity of Essex Street on the Lower East Side of Manhattan. Id. Special Agents Thomas MacDonald and Michael Burgwald, the two FBI agents who participated in the arrest, prepared a report, dated February 12, 2008, of a number of statements that Mr. Jordan allegedly made at the time of the arrest. Id. These included statements about Mr. Jordan's current address, as well as the following "utterances": "'I knew I shouldn't have messed with her'; 'I suspect I pissed off the aunt from London' ('her aunt the ambassador')." Id. The report also indicates that after making these statements, Mr. Jordan was transported to the FBI's New York Field Office for post-arrest processing. Id. No mention is made on the FBI report of whether Mr. Jordan was informed of his Miranda rights. Id.

According to a separate FBI report, Mr. Jordan also made statements on the day of his arrest while being escorted during processing at the 109th Police Precinct in Flushing, New York. Id. ¶ 4. This report was prepared by Special Agent Brandon Waller on February 1, 2008. Id. While Mr. Jordan was being escorted, according to this report, he asked if Simone Thenault had indicated that he had threatened either her or her mother. Id. Mr. Jordan then reportedly made various statements about a series of interactions he had with Ms. Thenault and her aunt, who was

the Ambassador for Trinidad and Tobago to the United Kingdom. Id. In addition, Mr. Jordan reportedly asked whether he was being charged with assaulting Ms. Thenault and described an encounter between them in a bathroom. Id. Finally, Mr. Jordan made statements in response to questions about the return of his property. Id. No mention is made on Agent Waller's report of whether Mr. Jordan was informed of his Miranda rights. Id.

Ms. Jordan's version of these events differs materially. Although Mr. Jordan acknowledges having made statements to the agents, he maintains that these statements were all made at an FBI office. See Jordan Affirmation ¶ 4. Furthermore, he indicates that after he arrived at the FBI office, he was brought into a room and asked to sign a document, which said in sum and substance that he would agree to talk to the agents. Id. ¶ 3. According to Mr. Jordan, he refused to sign the document and informed the agents that he wanted a lawyer present for any questioning. Id.

Mr. Jordan recalls that the agents indicated that they could arrange for him to receive the assistance of counsel, but then continued to question him despite his request for a lawyer. Id. ¶ 4. In response to their questions, he made statements about Ms. Thenault's aunt in London, as well as statements concerning Ms. Thenault and her mother. Id. He also made statements concerning a Connecticut warrant. Id. He does not believe that any of these statements were made before he requested the assistance of counsel. Id.

## ARGUMENT

I.   **Legal Background**

The Government may use a defendant's statement without transgressing his Fifth Amendment right against self-incrimination only when the decision to confess is the defendant's

free choice. See Miranda v. Arizona, 384 U.S. 344, 444 (1966). To protect the Fifth Amendment right against self-incrimination, the Supreme Court in Miranda ruled that police officers may not interrogate a suspect who has been taken into custody without first warning the person of his rights to remain silent and to legal counsel. 384 U.S. at 479. When "a defendant is not advised of his Miranda rights prior to making his custodial statement, an irrebuttable presumption of compulsion arises and the state cannot show that the suspect waived his rights voluntarily." United States v. Gaines, 295 F.3d 293, 298 (2d Cir. 2002) (citing Oregon v. Elstad, 470 U.S. 298, 307 (1985)). In these circumstances, the prosecution is barred from using statements obtained during the interrogation to establish its case-in-chief. See Michigan v. Harvey, 494 U.S. 344, 350 (1990).

Even if the Miranda warnings are administered, the prosecution has the burden of establishing by a preponderance of the evidence that a suspect waived his Miranda rights, and that his statement is truly the product of free choice. See Colorado v. Connelly, 479 U.S. 157, 168-69 (1986). To satisfy this burden, the Government must introduce sufficient evidence to establish that (1) the relinquishment of the right was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and (2) the waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). "[C]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights and . . . do not presume acquiescence in the loss of fundamental rights." Johnson v. Zerbst, 304 U.S. 458, 464 (1938) (internal quotations and citations omitted).

If a suspect invokes his right to counsel at any point during the interrogation, the authorities must immediately stop all questioning. See, e.g., Fare v. Michael C, 442 U.S. 707, 719 (1979) (emphasizing that the Supreme Court fashioned in Miranda "the rigid rule that an accused's request for an attorney is *per se* an invocation of his Fifth Amendment rights, requiring that all interrogation cease"). In Edwards v. Arizona, 451 U.S. 477 (1981), the Supreme Court held that if a defendant invokes his right to have counsel present during custodial interrogation, a valid waiver of that right could not be established by showing only that the defendant had responded to further police-initiated custodial interrogation even if the defendant has been advised of his rights. Id. at 484. In such circumstances, the fruits of any subsequent interrogation could not be used against the defendant, unless the defendant had himself initiated the further communications. Id. at 485.

## II.     Mr. Jordan's Post-Arrest Statements Should Be Suppressed.

Under the applicable case-law, the statements made by Mr. Jordan on the day of his arrest must be suppressed. After being arrested in the vicinity of Essex Street, Mr. Jordan was transported to an FBI office. See Jordan Affirmation ¶ 2. After he arrived at the FBI office, he was brought into a room and questioned by FBI agents. Id. ¶ 3. The agents asked him to sign a document, indicating that he agreed to talk to them, but Mr. Jordan declined to do so. Id. Instead, he informed them that he wanted a lawyer present for any questioning. Id. Although the agents indicated that they could arrange for Mr. Jordan to get a lawyer, they then continued to question him and did not provide him with a lawyer. Id. ¶ 4. Mr. Jordan made statements in response to their questions. Id. Because these statements were the product of custodial interrogation after Mr. Jordan had invoked his right to counsel, the statements are not admissible

against him. Accordingly, the Fifth Amendment requires that Mr. Jordan's post-arrest statements be suppressed. See Edwards v. Arizona, 451 U.S. at 484-85.

## CONCLUSION

Mr. Jordan respectfully requests that this Court enter an order suppressing his post-arrest statements, as the statements were obtained in violation of his constitutional rights.

Dated:   New York, New York
         May 8, 2008

>                                    LEONARD F. JOY, ESQ.
>                                    Federal Defenders of New York, Inc.
>                                    Attorney for Defendant
>                                    **JOSEPH JORDAN**
>                                    52 Duane Street - 10th Floor
>                                    New York, New York  10007
>                                    Tel.:  (212) 417-8734
>
>                                    *Fiona Doherty*
>                                    FIONA DOHERTY, ESQ.
>                                    Of Counsel

TO:   MICHAEL J. GARCIA, ESQ.
      United States Attorney
      Southern District of New York
      One Saint Andrew's Plaza
      New York, New York 10007
      Attn: **HOWARD MASTER, ESQ.**
           Assistant United States Attorney