UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA          :

             v.                          :

JOSEPH JORDAN,                    :

           Defendant.          :

-------------------------------------------------------x

**ATTORNEY AFFIRMATION**

08 Cr. 124 (DLC)

I, Fiona Doherty, hereby declare under the penalties of perjury, pursuant to 28 U.S.C. § 1746, that:

1.      I am an Assistant Federal Defender with the Federal Defenders of New York. I have been appointed by the Court to represent JOSEPH JORDAN in this action. I make this affirmation in support of a motion for misjoinder and/or severance and to suppress the evidence seized from Mr. Jordan during his January 11, 2008 and March 3, 3008 arrests.

2.      The statements contained in this affirmation are based upon my review of the indictment, the search warrant application, and other documents provided by the government in discovery.

3.      Mr. Jordan was arrested by the FBI on January 11, 2008 in the vicinity of Essex Street in Manhattan. See Exhibit A ¶ 9 (relevant pages of a search warrant affidavit by Special Agent Brandon Waller). Mr. Jordan was arrested pursuant to an arrest warrant that had been issued by the District of Connecticut for unlawful flight to avoid prosecution in violation of 18 U.S.C. § 1073. Id. After his arrest, Mr. Jordan would not tell the arresting officers where he resided. Id. The officers seized a wallet and other materials from Mr. Jordan following his arrest. Id. Among the materials seized by the officers was a January 9, 2008 affidavit, apparently

prepared by Mr. Jordan, relating to a claim by Simone Thenault's mother that Mr. Jordan had

threatened to harm her on December 18, 2007.  See Exhibit B.  Following his January 11, 2008

arrest, Mr. Jordan was taken into state custody and held at Riker's Island.  See Exhibit C

(February 12, 2008 FBI Report).  On information and belief, he was charged in the New York

State system with harassing Ms. Thenault's mother, Diana Dodson.

4.      On February 6, 2008, an unidentified law enforcement officer conducted what the

FBI claims was a "routine inventory search" of Mr. Jordan's wallet.  Exhibit A ¶ 10.  In

searching Mr. Jordan's wallet, the officer recovered a "business card of a car service company

that contained a handwritten note listing the address" of a building, located at 2773 Reservoir

Avenue, Bronx, New York, 10468 (the "Building").  Id.; see also Exhibit D (copy of the page

provided in discovery that includes this business card).  That same day, two detectives with the

New York City Police Department (the "NYPD") "traveled to the Building to determine if the

Building contained Jordan's residence."  Exhibit A ¶ 11.  The NYPD detectives interviewed a

resident of the Building, who recognized a picture of Mr. Jordan and confirmed that Mr. Jordan

lived on the second floor of the Building.  Id.  The next day, one of the NYPD detectives returned

to the Building with Special Agent Waller of the FBI.  Id. ¶ 12.  The officers interviewed two

residents of the Building, examined the common areas of the premises, and inspected materials

and boxes that they believed belonged to Mr. Jordan.  Id.  This information was then used to seek

a federal search warrant of the second floor of the Building, which was issued by Judge Eaton on

February 8, 2008.  Id. at p. 1.

5.      Other materials were also allegedly recovered during the "inventory search" of Mr.

Jordan's wallet.  Additional materials found in the wallet (and referenced in the search warrant

application) include a bank debit card in the name of "Joseph Landa" and a card with Mr.

Jordan's cell phone provider and the following language: "DF last 4: 6522." Id. ¶ 17. Other

items seized from the wallet include access devices and checks in the name of Patrick Jordan,

bank records, receipts, business cards, documents relating to a voicemail service, and listings of

contact details and telephone numbers. Copies of these items were provided by the government

in discovery.

6.      On March 3, 2008, Mr. Jordan was arrested at Riker's Island by Special Agent

Waller and Detective Paul Courtney subsequent to a three-count indictment obtained in the

Southern District of New York on February 14, 2008. See Exhibit E (March 3, 2008 FBI report).

He was then brought to the FBI offices at 26 Federal Plaza for processing and to be interviewed.

Id. Subsequent to his March 3, 2008 arrest, documents were also seized from his possession.

These documents, which were provided to the defense in discovery, included materials that Mr.

Jordan had prepared regarding allegations that he had threatened Ms. Thenault, her mother, and

her aunt (Ambassador Glenda Morean-Phillip). The documents seized on March 3, 2008 also

included such materials as Mr. Jordan's hand-written notes, the contact details for his friends,

family and potential witnesses in his case, and a letter written to a friend.

7.      On the afternoon of March 3, 2008, Mr. Jordan was presented before the

Honorable Ronald Ellis on the three-count indictment. On May 1, 2008, the government

obtained a superseding indictment, which contains seven additional counts.

8.      On June 9, 2008, the government provided a bill of particulars to the defense

disclosing the details of the threats that they will seek to prove at trial in relation to Counts One

and Two. See Exhibit F. These alleged threats include statements that Mr. Jordan would "kill"

Ms. Thenault, her mother, and her sister, "take [Ms. Thenault] off the planet," and "wipe all of [them] off the face of the earth." Id. The alleged threats also include statements directed at Ambassador Morean-Phillip regarding individuals with AK-47s seeking to get at her in London and advising her that unless she apologized she should be provided with increased security. Id.

I declare under the penalty of perjury that the foregoing is true and accurate.

Dated:    New York, New York
          June 13, 2008


                                        Fiona Doherty
                                        FIONA DOHERTY, ESQ.

4

AO
(Rev. 8/97)                           AFFIDAVIT FOR SEARCH WARRANT

| United States District Court | DISTRICT<br>Southern District of New York |
|---|---|

| UNITED STATES OF AMERICA<br>v.<br>PREMISES KNOWN AND DESCRIBED AS<br><br>2773 Reservoir Avenue, 2nd Floor<br>(padlocked room & common areas),<br>Bronx, New York, 10468, and all locked<br>and closed containers | DOCKET NO. 08 MAG     MAGISTRATE'S CASE NO. 0262 |
|---|---|
| | TO:<br><br>United States Magistrate Judge |

The undersigned being duly sworn deposes and says: That he/she has reason to believe that

| ☐ on the person     ☒ on the premises | DISTRICT   Southern District of New York |
|---|---|

PREMISES KNOWN AND DESCRIBED AS

2773 Reservoir Avenue, 2nd Floor (padlocked room & common areas), Bronx, New
York, 10468, and all locked and closed containers

the following property is concealed:

SEE ATTACHED AFFIDAVIT

Affiant alleges the following grounds for search and seizure[2]

SEE ATTACHED AFFIDAVIT

the attached affidavit which is incorporated as part of this affidavit for search warrant

Affiant states the following facts establishing the foregoing grounds for issuance of a Search Warrant

SEE ATTACHED AFFIDAVIT

| SIGNATURE OF AFFIANT<br><br>*Brandon M Waller* | OFFICIAL TITLE, IF ANY<br><br>Brandon Waller<br>Special Agent, Federal Bureau of Investigation |
|---|---|

Sworn to before me, and subscribed in my presence:

| DATE<br><br>JUN 0 8 2008 | JUDGE' OR FEDERAL MAGISTRATE<br><br>S/ Douglas F. Eaton |
|---|---|

United States Judge or Judge of a State Court of Record.
search is to be authorized "at any time in the day or night" pursuant to Federal Rules of Criminal Procedure 41(c), show reasonable cause
for

DOUGLAS F. EATON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - x

IN THE MATTER OF THE APPLICATION OF       :        **TO BE FILED**
THE UNITED STATES OF AMERICA                       <u>UNDER SEAL</u>
FOR A SEARCH WARRANT FOR THE              :-
PREMISES KNOWN AND DESCRIBED                       AFFIDAVIT IN
AS 2773 RESERVOIR AVENUE, 2ND FLOOR       :        SUPPORT OF A
(LOCKED ROOM & COMMON AREAS),                      SEARCH WARRANT
 BRONX, NEW YORK, 10468,                  :
AND ALL LOCKED AND CLOSED CONTAINERS
                                          :
- - - - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

          I, BRANDON WALLER, being duly sworn, depose and say:

          1.   I am a Special Agent with the Federal Bureau of

Investigation and have been so employed for approximately 5 years.  I

am presently assigned to a task force which investigates interstate

threatening communications and apprehends fugitives, among other

matters.  I have participated in numerous investigations involving,

among other things, the use of computer systems, telephones, and

facsimiles to transmit threatening communications, and am familiar

with the use of fraudulent identification and other documents to

perpetrate the above crimes.  I have participated in the execution of

numerous searches and seizures pursuant to warrants.

          2.   I have participated in the investigation of this

matter, and I am familiar with the information contained in this

affidavit based on my own personal participation in the

investigation, my review of documents, conversations I have had with

other law enforcement officers about this matter, my training and

experience, and numerous discussions I have had with other law

enforcement personnel concerning the offenses that are the subject of this investigation. Because this affidavit is being submitted for the limited purpose of establishing probable cause to search the PREMISES described below, I have not included herein the details of every aspect of the investigation. Where actions, conversations and statements of others are related herein, they are related in substance and in part, except where otherwise indicated.

3. I respectfully submit this affidavit in support of an application for a warrant to search the premises known and described as a padlocked room and all common areas accessible to all residents of the second floor of 2773 Reservoir Avenue, 2nd Floor, Bronx, New York, 10468 (the "PREMISES"), and all locked and closed containers therein and the contents thereof. Based on the facts set forth in this affidavit, there is probable cause to believe that there is presently located at the PREMISES evidence and instrumentalities of violations of federal law, including violations of Title 18, United States Code, Sections 875 (interstate transmission threats to kidnap or injure); 878 (threats to an internationally protected person); 1029 (access device fraud); and 1028A (aggravated identity theft). Such evidence includes the items set forth in Exhibit A to the Search Warrant.

THE PREMISES

4. I know from personal knowledge that 2773 Reservoir Avenue is a two-story detached red brick building (the "Building"),

2

located between 195th Street and Strong Avenue in the Bronx, New York. The second floor of the Building is reached from a stairwell that is located on the left side of the foyer of the Building, to the left of the front entrance. The PREMISES consists of a room that is reached through a padlocked door and that is behind the top of the stairs and facing the front of the house; a hallway and kitchen located at the top of the stairs; a storage area that is adjacent to the padlocked door; and several unlocked storage rooms. The padlocked door is white, and is locked with a large external padlock. There are boxes with the name "James Jordan" on them piled up next to the door of the padlocked room. The second floor of the Building has two other rooms that are resided in and exclusively occupied by two other individuals ("Resident-1" and "Resident-2").

## THE INVESTIGATION

5.     The basis for this application for a search warrant is information gathered from on or about December 2007 to the present in connection with an ongoing investigation into potential interstate threat, stalking, and identity theft offenses committed by JOSEPH RAY JORDAN, a/k/a "Patrick Jordan," a/k/a "James Jordan," a/k/a "Joe Jordan," a/k/a "Douglas Fidler" (the "Investigation"). In summary, the Investigation has uncovered evidence that JORDAN physically abused his former girlfriend ("Victim-1"), who resided in Queens, New York, and caused her to flee from New York to her sister's home in Virginia to escape from JORDAN. JORDAN then began making phone calls and sending

3

"hold hatred toward" [Victim-2] and "are not well financed, but are now living in London awaiting [the] right opportunity to get at [Victim-2]." The facsimile further states that these individuals "[h]ave maybe two AK-47 shipped Jamaica-Miami-UK via FedEx," and that "my friend believes they will wait and act when the opportunity arrives both against [Victim-2] and her family."

   b)    The cover page of the January 2, 2008 facsimile is identical in format to the cover page of another facsimile that was also sent to Victim-2 on January 2, 2008, which purports to be from Individual-1. In addition, it is identical in format to the cover page of another facsimile sent to Victim-2 from "Sheraton Hotel" on or about January 4, 2008 which states "A complete apology for [Victim-1] is in her email," and to the cover page of the facsimile sent on or about December 30, 2007, referenced above, which lists Victim-1's home address and the 212 Phone Number as the source of the fax.

   9.    In the course of the investigation, I have learned that JORDAN was a fugitive who was wanted by the State of Connecticut for criminal conduct involving attempted kidnaping and other offenses, and who had been indicted by the United States Attorney's Office for the District of Connecticut for Unlawful Flight to Avoid Prosecution, in violation of Title 18, United States Code, Section 1073. On January 11, 2008, the FBI located JORDAN in the vicinity of 123 Essex Street, New York, NY, and placed JORDAN

11

under arrest pursuant to a warrant that had been issued by the District of Connecticut.  Incident to arrest, JORDAN would not tell arresting officers where he resided.  A wallet, a large folding knife, keys, and a cell phone, among other material, was recovered from JORDAN incident to arrest.  JORDAN was not carrying a laptop computer when he was arrested.

10.    A business card of a car service company that contained a handwritten note listing the address of the Building was located during a routine inventory search of JORDAN's wallet that took place on February 6, 2008.

11.    I learned from a detective with the New York City Police Department ("NYPD") ("Detective-1") that on February 6, 2008, he and another NYPD detective ("Detective-2") traveled to the Building to determine whether the Building contained JORDAN's residence.  Detective-1 informed me that Resident-1 recognized a picture of JORDAN that Detective-1 presented to him and stated that JORDAN moved into the building in the summer of 2006, and that he, Resident-2, and JORDAN were the only residents of the second floor of the Building.

12.    On February 7, 2008, Detective-1 and I returned to the Building to interview Resident-1 and Resident-2.  Resident-1 stated that he had lived in the Building for over five years. Resident-1 stated that he, Resident-2, and JORDAN were the only residents of the second floor of the Building, and that the three

shared a kitchen and bathroom on the second floor of the Building. Resident-1 stated that JORDAN resided in the room on the second floor that was locked with a padlock, and was the only resident of that room. Resident-1 stated that he had not seen JORDAN in several weeks, but that no one else to his knowledge had access to the PREMISES or had entered the PREMISES since he had last seen JORDAN. Resident-1 further stated that he often saw JORDAN using a laptop computer in the common areas of the PREMISES.

13. Resident-2 also stated that he, Resident-1, and JORDAN were the only three people who lived on the second floor of the Building, and that the three shared a kitchen and bathroom on the second floor of the Building. Resident-2 also stated that JORDAN resided in the room on the second floor that was locked with a padlock, and was the only resident of that room. Resident-2 stated that he had not seen JORDAN in several weeks and was unaware of JORDAN's arrest, but that no one else to his knowledge had access to the PREMISES or had entered the premises since he had last seen JORDAN.

14. Resident-1 and Resident-2 permitted Detective-1 and me to walk around the common areas of the PREMISES during our visit on February 7, 2008. During this examination we saw, in plain view, boxes with the name "James Jordan" on them piled up next to the door of the padlocked room. In addition, we saw packaging material for a fax machine and scanner stacked among boxes with the name "Jordan"

written on the boxes.

15.  I have reviewed a document provided to me by the provider of cell phone service for the Cell Phone Number.  The document explains that several dozen calls were made from the Cell Phone Number to phone numbers associated with Victim-1, Victim-1's sister in Virginia and Victim-2 in the United Kingdom, and that over 30 of those calls were routed through a cell site in the vicinity of 2780 University Avenue, Bronx, New York (the "Cell Site").

16.  I know from my training and experience that cell phone calls routed through a cell site must be made from within close proximity to that cell site.  I know from examination of a map of the Bronx that the Cell Site is located one block from the Building.  In addition, a computer records check for police reports originating from the Building revealed that an unrelated 911 call made from the Building was routed through the Cell Site.

17.  In the course of the investigation, I have learned that JORDAN had signed up for the Cell Phone Number and the 212 Number under the alias "Douglas Fidler" using a Social Security Number ending in "6522."  I conducted a search of commercial databases and determined that a person named Douglas Fidler, with a Social Security Number ending in "6522," lives in California and has no known relation to JORDAN.  Upon arrest on January 11, 2008, JORDAN stated that his Social Security number ends in "7272."  A small printed card that was found during a routine inventory search

14

of JORDAN's wallet contains the phone number of JORDAN's cell phone provider followed by the following language: "DF last 4: 6522." A bank debit card in the name of a "Joseph Landa" also was found during a routine inventory search of JORDAN's wallet.

## REQUEST TO SEARCH THE PREMISES

18. In light of the foregoing information, and based on my experience and training, I submit that there is probable cause to believe that the PREMISES, including any closed or locked containers therein and the contents thereof, contains evidence, fruits and instrumentalities of violations of at least Title 18, Sections 875 (interstate transmission threats to kidnap or injure); 878 (threats to an internationally protected person); 1029 (access device fraud); and 1028A (aggravated identity theft), and that the following fruits and instrumentalities of those violations can be found at the PREMISES:

a. Records, documents, files, and other material which relate to personal and proprietary identification or account information of JORDAN, as set forth in greater detail in paragraph 1 of Exhibit A, are believed to be at the PREMISES because JORDAN resides at the PREMISES and, based on my experience and training, individuals keep such information at their residences. This information is sought to corroborate other evidence found in the course of the Investigation and to facilitate access to the computers and electronic equipment used as instrumentalities of

15

20

# STATE OF NEW YORK

<u>Affidavit of J. T. Jordon</u>

I, J. T. Jordan, DOB 07/12/1970, do hereby say and depose as follows:

1. On or about January 9, 2008, I received a telephone call on my business cell phone from a New York City Police Detective from the 109th precinct (herinafter referred to as "detective" or "the detective").

2. The detective informed me that a woman named Diana Dodson (hereinafter referred to as Ms. Dodson) had alleged that I had threatened to harm her on December 18, 2007.

3. I know Ms. Dodson to be my former girlfriend's mother - whose home in Flushing, NY I resided at for most of the summer and until December 5, 2007.

4. On December 5th 2007, I returned to my brother's home in Brooklyn. That day, I received a call from Ms. Dodson. She informed me that Simone (her daughter/my girlfriend) had run out of the house "upset." For about 3 days, I communicated with Ms. Dodson by phone. And she arranged for me to pick up all of my belongings.

5. Ms. Dodson then left for Virginia where her other daughter resides. I know that on December 18, 2007, Ms. Dodson was in Virginia, and not in New York. I also know that on or about December 10, 2007, Ms. Dodson's son, Darren, arranged to have her cell phone number changed to a number I did not know (because the situation between her daughter and I was upsetting her).

6. I say now, as I told the detective, that I have always known Ms. Dodson to be a God-fearing, religious woman who would not lie. However, on the date of the alleged threat, I neither had any way to communicate with Ms. Dodson, nor was she in the state of New York. Furthermore, I have never, shall never and would never threaten to harm or harm Ms. Dodson. I also have no intention to attempt any contact or communication with her.

189

7. Simone had maintained communication with me until December 15, 2007 when I told her to "stay gone" during a telephone conversation.   I regret that remark.    She then left for London, England where her aunt is an ambassador from Trinidad & Tobago to the UK.    I did telephone to her aunt about two weeks ago.    Her aunt, Glenda Morean-Phillip (the sister of Ms. Dodson) told me that if I ever come to the UK I would not be returning, and that she was "of Haitian decent" and "Haitians sometimes take care of matters outside of the law."   I recorded that comment and sent copies to every Trinidad & Tobago embassy in Europe, and to the media.   I believe it is that act, and pressure on Ms. Dodson from her sister, that has led to Ms. Dodson's accusations.

8. I have the utmost respect for Ms. Dodson, and for the law.   I have assured the detective that I will stay away from Ms. Dodson.   And I shall.

Sworn to, on this _2_ day of January, 2008

J. T. Jordon

FD-302 (Rev. 10-6-95)

-1-

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription    02/12/2008

On January 11, 2008 (Friday) PATRICK JAMES JORDAN was arrested at the northeast corner of Essex Street and Grand Street in the lower East Side section of Manhattan, New York. JORDAN was arrested by Federal Bureau of Investigation (FBI) Special Agents Thomas P. MacDonald and Michael A. Burgwald, and New York City Police Department (NYPD) Detective Paul Courtney.

At the time of his arrest, for identification purposes, JORDAN produced Delaware identification card #9358897, for PATRICK JAMES JORDAN, Date of Birth: July 12, 1968, of 73 Greentree Drive, Apartment 543, Dover, Delaware. JORDAN was advised that he was arrested on authority of a federal fugitive warrant. JORDAN made the following utterances at the time of his arrest: "I knew I shouldn't have messed with her"; "I suspect I pissed off the aunt from London" ("her aunt the ambassador"). These statements were recorded (notes) by SA Burgwald. JORDAN also advised that his current residence was 245 Main Street, Second Floor, Brooklyn (Greenpoint), New York. After his arrest JORDAN was transported to the FBI's New York Field Office by Special Agent Burgwald and Detective Courtney for post-arrest processing. JORDAN was subsequently transferred to the custody of Detective Courtney, FBI Special Agent Brandon M. Waller and Deputy Steven Panepinto of the United States Marshals Service.

The following biographical information was obtained for JORDAN:

|  |  |
|---|---|
| FULL NAME: | PATRICK JAMES JORDAN |
| SEX: | Male |
| RACE: | White |
| HAIR: | Blonde |
| EYES: | Blue |
| HEIGHT: | 5'11" |
| WEIGHT: | 168 |
| DOB: | July 12, 1968 |
| POB: | Lakewood, New Jersey |
| AGE: | 39 |
| SSAN: | 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 |
| RESIDENCE: | 73 Greentree Drive |
|  | Apartment 543 |
|  | Dover, Delaware 19904 |
| CELLULAR: | (646)403-7118 |

---

| | | | |
|---|---|---|---|
| Investigation on | 01/11/2008 | at | New York, NY |
| F | 88A-NH-43854; 9A-NY-298967- 45 | Date dictated | n/a |
| by | SA Thomas P. MacDonald:tpm<br>SA Michael A. Burgwald | | |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;    186

FD-302 (Rev. 10-6-95)

- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription    02/01/2008

    PATRICK JORDAN, aka JOSEPH JORDAN, aka DOUGLAS FIDLER was arrested on January 11, 2008 in the vicinity of Rivington St and Essex St, in Manhattan on a Federal warrant issued by the Federal District of Connecticut.

    While in FBI custody, JORDAN was told that he was arrested on an outstanding state warrant from Connecticut. He stated that he had not lived in Connecticut and that he could not be the individual who was wanted there. The biographical information he provided, as indicated on the U.S. Marshals Service Form 312 was that his address was in Delaware (he has a non-driver's identification from that state) and that his social security number was 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. The results of the fingerprint search indicated that he was the same individual (under the name of JOSEPH JORDAN) who was wanted in both Connecticut and Massachusetts. That same identification produced a number of aliases, birth dates, and social security numbers.

    JORDAN was then transported to the 109th police precinct of the New York City Police Department in Flushing, New York for arrest processing on a NYPD state charge as well as for open warrants from Connecticut and Massachusetts.

    While being escorted during processing, JORDAN made various inquiries and statements. He asked if SIMONE (known as SIMONE THENAULT) had said that he threatened her mother (DIANA DODSON) or her. He was told that that issue was an NYPD matter. He then stated that he had said mean things which he regretted but did so in the course of an argument. He stated that she told him that he was ugly and that he replied that she was black and that he regretted saying that. Additionally, he asked if the FBI involvement was due to SIMONE's aunt who was the Trinidad and Tobago Ambassador to the United Kingdom. He then stated that if the Ambassador said he threatened her, that the FBI should ask her to prove it because he did not. He stated that he said things he regretted but at no time did he make threatening statements to her. He then stated that when he called SIMONE from a number he did not know, the Ambassador got on the phone and actually threatened him. He stated that she told him that if he comes to London, he will not be going back and made a reference that she was of Haitian descent and that Haitians can deal with things. JORDAN then asked if the

---

Investigation on   1/11/2008    at   Queens, New York

e # 9A-NY-298967             Date dictated   N/A

by   SA Brandon M. Waller

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

187

FD-302a (Rev. 10-6-95)

9A-NY-298967

Continuation of FD-302 of _____PATRICK JORDAN_____ , On __1/11/2008__ , Page ___2___

NYPD charge was for assaulting SIMONE. He then stated that he was working in her bathroom when he found her cell phone and thought she might be talking to an old boyfriend. She demanded the cell phone back and was grabbing for the cell phone. In response he tried to wave her off and caused her to fall into the bathtub resulting in her injuring her back. He stated that he did not mean to cause that and offered to take her to the hospital but she stated that she did not need to go.

JORDAN was asked who he wanted his property to be returned to. He stated that he wanted his friend SEBASTIAN (known as SEBASTIAN MAYER) to receive his belongings. JORDAN also stated that he lived in Greenpoint, Brooklyn but would not provide the actual address.





2773 RESERVOIR





FD-302 (Rev. 10-6-95)

- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription    03/03/2008

On March 3, 2008, PATRICK JORDAN, aka Joseph Ray Jordan, was arrested at Riker's Island subsequent to an indictment obtained in the Southern District of New York on February 14, 2008.    JORDAN was transported to the FBI office located at 26 Federal Plaza where he was processed and interviewed.

During transport, JORDAN was asked about his not-for-profit organization called CaringPals.org.    He stated that it was a legitimate not-for-profit and that his father was on the board of directors.    Additionally, he stated that "COWERN" was his partner in the venture.    He was told that the investigators would contact COWERN, known to the FBI as DONALD COWERN, to inform him that JORDAN was incarcerated and that he should continue pushing the company forward.    JORDAN stated that he did not have any information for COWERN and that he hadn't seen him in two years.

JORDAN was informed that as a result of a search warrant conducted at his residence of 2773 Reservoir Avenue, Bronx, New York, a subsequent investigation regarding identity fraud may be conducted against him.    He was shown the search warrant as well as the items seized during the search warrant.    He was shown photocopies of some of the credit cards seized from his residence as well as checks in the name of JASON KAUFMAN.    He stated that he never stole money from anyone.

When asked about his cell phone in the name of DOUGLAS FIDLER, he stated that it wasn't a crime because he was paying the bill.    He was informed that he couldn't open up an account with someone else social security number without their permission.    He again stated that he did not steal any money from anyone.

JORDAN was read his Advice of Rights using an FD-395 and initialed each right to acknowledge that it was read.    He did not waive his right to counsel and stated that he might talk more but only with a lawyer present.    He was then processed and transported to the Southern District of New York for his initial appearance.    JORDAN was remanded to the custody of the United States Marshal Service by Magistrate Judge Ellis.

---

Investigation on    03/03/2008    at  Bronx, New York

File #  9A-NY-298967                               Date dictated  N/A

SA Brandon M. Waller:bmw
by   DET Paul Courtney



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 9, 2008

**BY FACSIMILE**

Fiona Doherty, Esq.
Federal Defenders of New York
52 Duane Street, 10ᵗʰ Floor
New York, New York 10007

       Re:    <u>United States</u> v. <u>Joseph Ray Jordan,</u>
              **S1 08 Cr. 124 (DLC)**

Dear Ms. Doherty:

       Pursuant to the defendant's motion for a bill of particulars under Fed. R. Crim. P. 7(f), the Government submits the following bill of particulars for Counts One and Two of the Superseding Indictment in the captioned case:

       <u>Count One</u>: Count One charges JOSEPH RAY JORDAN, a/k/a "Patrick Jordan," a/k/a "Joe Jordan," a/k/a "Douglas Fidler," a/k/a "Joseph Landa," a/k/a "Jason Kaufman," a/k/a "Matthew McGlasson," the defendant, with violating Title 18, United States Code, Section 875(c) by transmitting in interstate or foreign commerce threats with to kidnap his former girlfriend ("Victim-1"), and to injure the person of Victim-1, Victim-1's aunt ("Victim-2"), and other members of Victim-1's immediate family. Following are particulars of the threats alleged in Count One:

          a.     Between in or about December 5, 2007, and in or about December 16, 2007, JORDAN stated to Victim-1 via telephone that, in sum and substance, he would "kill" Victim-1 and "take [her] off the planet."

          b.     Between in or about December 7, 2007, and in or about December 16, 2007, JORDAN stated to Victim-1's sister and Victim-1's mother via telephone that, in sum and substance, he would "kill" them and "wipe all of [them] off the face of the earth."

Ms. Fiona Doherty, Esq.
June 9, 2008
Page 2 of 4

c.    On or about January 2, 2008, JORDAN sent a facsimile that stated, among other things: "Emergency situation as [Victim-2] is in grave danger. . . . There are 3-4 men (3 Jamaican, 1 British) and 1 woman (unknown decent) in London. . . . Background is that two brothers hold hatred toward [Victim-2]. . . . They are not well financed, but are now living in London awaiting right opportunity to get at [Victim-2]. . . . Have maybe two AK-47 shipped Jamaica-Miami-UK via FedEx . . . . My friend believes they will wait and act when the opportunity arrives both against [Victim-2] and her family."

d.    On or about January 3, 2008, JORDAN sent an e-mail to Victim-1 that stated, among other things: "I am now convinced that you need to be rescued. Remember, if youare quickly grabbed sometime in the next 2 weeks or so, relax, no one is to harm you. But, just like when a body guardis ushering away a politician from harm, a few men may need to quickly grab you and wisk you away for your protection, so you can escape youraunt's control . . . . John and his girl are training two men who will help. If you are with your aunt, she must stay uninvolved when it goes down. There will likely be no tolerance for interference from her or her laughable 'body guards.' They will notact until they are least expected – so stay prepared – keep your important things with you. We will putvphase1 into action unless I hear from you directly that you are safe and living of your own free will. . . . I am so worried about you. You are a prisoner. You cannot do what you want. Youraunt is holding you. Don't worry. Weareabout to make world news with our rescue."

e.    On or about January 5, 2008, JORDAN sent a text message to Victim-1 via telephone that stated: "We are finally ready. Now just waiting for moment least expected. Always keep your passport on you starting today. Here's code word that only you will know: baby oil. That should tell you when we will strike."

f.    On or about January 5, 2008, JORDAN sent a text message to Victim-1 via telephone that stated: "My friend Monique offered of this place go Paris. I might go and return only on the day of the rescue. That may be tomorrow or 2 or more weeks from now. The call is john's. Be ready. Joe."

g.    On or about January 5, 2008, JORDAN sent a facsimile to Victim-2 that stated, among other things: "You are to immediately apologize by telephone call to the offended party. It is very likely that failure to do so will be regretted. . . . [I]n order to be able [t]o go about your life in a secure and comfortable manner, . . . and without the need albeit imperfect for increased security and overwhelming expense, you must prove that the young woman is safe, acting only of her own free will, and not being manipulated, controlled, or otherwise held against her own free will. . . . Basically, world news that you will not like can occur, or you can be wise and diplomatic. John."

Ms. Fiona Doherty, Esq.
June 9, 2008
Page 3 of 4

Count Two: Count Two charges JOSEPH RAY JORDAN, a/k/a "Patrick Jordan," a/k/a "Joe Jordan," a/k/a "Douglas Fidler," a/k/a "Joseph Landa," a/k/a "Jason Kaufman," a/k/a "Matthew McGlasson," the defendant, with violating Title 18, United States Code, Section 878 by threatening to attack the residence of Victim-2, who is an internationally protected person, and to seize and harm Victim-2 if Victim-2 resisted JORDAN's efforts to kidnap Victim-1. Following are particulars of the threats alleged in Count Two:

      a.     On or about January 2, 2008, JORDAN sent a facsimile that stated, among other things: "Emergency situation as [Victim-2] is in grave danger. . . . There are 3-4 men (3 Jamaican, 1 British) and 1 woman (unknown decent) in London. . . . Background is that two brothers hold hatred toward [Victim-2]. . . . They are not well financed, but are now living in London awaiting [the] right opportunity to get at [Victim-2]. . . . Have maybe two AK-47 shipped Jamaica-Miami-UK via FedEx . . . . My friend believes they will wait and act when the opportunity arrives both against [Victim-2] and her family."

      b.     On or about January 3, 2008, JORDAN sent an e-mail to Victim-1 that stated, among other things: "I am now convinced that you need to be rescued. Remember, if youare quickly grabbed sometime in the next 2 weeks or so, relax, no one is to harm you. But, just like when a body guardis ushering away a politician from harm, a few men may need to quickly grab you and wisk you away for your protection, so you can escape youraunt's control . . . . John and his girl are training two men who will help. If you are with your aunt, she must stay uninvolved when it goes down. There will likely be no tolerance for interference from her or her laughable 'body guards.' They will notact until they are least expected – so stay prepared – keep your important things with you. We will putvphase1 into action unless I hear from you directly that you are safe and living of your own free will. . . . I am so worried about you. You are a prisoner. You cannot do what you want. Youraunt is holding you. Don't worry. Weareabout to make world news with our rescue."

      c.     On or about January 5, 2008, JORDAN sent a text message to Victim-1 via telephone that stated: "We are finally ready. Now just waiting for moment least expected. Always keep your passport on you starting today. Here's code word that only you will know: baby oil. That should tell you when we will strike."

      d.     On or about January 5, 2008, JORDAN sent a text message to Victim-1 via telephone that stated: "My friend Monique offered of this place go Paris. I might go and return only on the day of the rescue. That may be tomorrow or 2 or more weeks from now. The call is john's. Be ready. Joe."

      e.     On or about January 5, 2008, JORDAN sent a facsimile to Victim-2 that stated, among other things: "You are to immediately apologize by telephone call to the offended party. It is very likely that failure to do so will be regretted. . . . [I]n order to be able [t]o go about

Ms. Fiona Doherty, Esq.
June 9, 2008
Page 4 of 4

your life in a secure and comfortable manner, . . . and without the need albeit imperfect for increased security and overwhelming expense, you must prove that the young woman is safe, acting only of her own free will, and not being manipulated, controlled, or otherwise held against her own free will. . . . Basically, world news that you will not like can occur, or you can be wise and diplomatic. John."

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney
Southern District of New York

By:

Howard S. Master
Assistant United States Attorney
(212) 637-2248

cc:    The Honorable Denise L. Cote (by hand delivery)