```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                         :
UNITED STATES,                           :
                    Plaintiff,           :
                                         :       08 Cr. 124 (DLC)
          -v-                            :
                                         :       OPINION & ORDER
JOSEPH RAY JORDAN,                       :
                    Defendant.           :
                                         :
----------------------------------------X
```

Appearances:

For the United States of America:
Howard Master
Daniel Stein
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
1 St. Andrew's Plaza
New York, NY 10007

For the Defendant Pro Se:
Joseph Jordan
60818-054
Metropolitan Correctional Center
150 Park Row
New York, NY 10007

Standby Counsel for the Defendant:
Andrew Patel
Law Office of Andrew G. Patel
111 Broadway, 13th Floor
New York, NY 10006


DENISE COTE, District Judge:

    On October 16, 2008, following a jury trial, the defendant was found guilty of five counts.  Sententcing on those five

counts occurred on September 16, 2009.[1]  In his pre-sentence submissions, the defendant, who was proceeding pro se,[2] disputes the pre-sentence report's ("PSR") calculation of the maximum sentence.  This Opinion resolves those disputes.

BACKGROUND

The defendant was indicted on twelve counts, and has been tried on and convicted of five of those counts.  See United States v. Jordan, 591 F. Supp. 2d 686 (S.D.N.Y. 2008).  The five counts and the elements of each count, as given to the jury in the Court's charge, are as follows.

   1. Count One:  18 U.S.C. § 875(c)

Count One charged Jordan with knowingly and willfully transmitting between December 2007 and January 11, 2008, in interstate and foreign commerce, threats to kidnap or injure, in violation of 18 U.S.C. § 875(c), by making telephone calls and sending emails and facsimiles that threatened to kidnap Simone Thenault ("Thenault"), and to injure Thenault, Thenault's aunt

---

[1] Following the October 2008 trial, the parties were preparing for trial on the seven counts in the indictment which had been severed.  In April 2009, the parties switched course and requested that Jordan first be sentenced on the five counts on which he stood convicted.

[2] Following an allocution on August 14, 2009, the defendant represented himself until, in the midst of the September 16 sentencing proceeding, he requested that his assigned counsel, Mr. Andrew Patel, resume representing him.  Mr. Patel had acted as standby counsel during the interval when the defendant represented himself.

2

Glenda Morean-Phillip ("Morean-Phillip"), and other members of Thenault's immediate family.[3] The statutory maximum term of imprisonment is five years.

The charge to the jury described the three elements of Count One as follows:

> First: That in the period between December 2007 and up to and including January 11, 2008, the defendant communicated a threat (1) to kidnap Simone Thenault or (2) to injure Simone Thenault, or other members of her immediate family including her aunt Glenda Morean-Phillip. To injure in this context means to inflict bodily harm.
>
> Second: That the threat was transmitted in interstate or foreign commerce.
>
> Third: That the defendant knowingly and intentionally transmitted the threat.

The charge identified the seven threats that the Government asserted as the basis for Count One as follows:

(1) Between in or about December 5, 2007, and in or about December 16, 2007, the defendant stated to Ms. Thenault via telephone that, in sum and substance, he would "kill" Ms. Thenault and "take [her] off the planet."

(2) Between in or about December 7, 2007, and in or about December 16, 2007, the defendant stated to Ms. Thenault's sister and her mother via telephone that, in sum and substance, he

---

[3] The copy of the indictment presented to the jury was redacted. It is the redacted indictment that is described in this Opinion.

would "kill" them and "wipe all of [them] off the face of the earth."

(3) On or about January 2, 2008, the defendant sent a facsimile that stated, among other things:

> Emergency situation as Trinidad High Commissioner is in grave danger. . . . There are 3-4 men (3 Jamaican, 1 British) and 1 woman (unknown decent) in London. . . . Background is that two brothers hold hatred toward the former Attorney General of the Republic of Trinidad and Tobago identified to be Glenda P. Morean-Phillip. . . . They are not well financed, but are now living in London awaiting right opportunity to get at Morean-Phillip. . . . Have maybe two AK-47 shipped Jamaica-Miami-UK via FedEx . . . . My friend believes they will wait and act when the opportunity arrives both against Morean-Phillip and her family.

(4) On or about January 3, 2008, the defendant sent an e-mail to Ms. Thenault that stated, among other things:

> I now am convinced that you need to be rescued. Remember, if you arequickly grabbed sometime in the next 2 weeks or so, relax, no one is to harm you. But, just like when a body guardis ushering away a politician from harm, a few men may need to quickly grab you and wisk you away for your protection, so you can escape youraunt's control . . . . John and his girl aretraining two men who will help. If you arewith your aunt, she must stay uninvolved when it goes down. There will likely be no tolerance for interference from her or her laughable 'body guards.' They will notact until they areleast expected - so stay prepared - keep your important things with you. We will putvphase1 into action unless I hear from you directly that you are safe and living of your own free will. . . . I am so worried about you. You are a prisoner. You cannot do what you want. Youraunt is holding you. Don't worry. Weareabout to make world news with our rescue.

4

(5) On or about January 5, 2008, the defendant sent a text message to Ms. Thenault via telephone that stated: "We are finally ready.  Now just waiting for moment least expected.  Always keep your passport on you starting today.  Here's code word that only you will know: baby oil.  That should tell you when we will strike."

(6) On or about January 5, 2008, the defendant sent a text message to Ms. Thenault via telephone that stated: "My friend Monique offered of this place go Paris.  I might go and return only on the day of the rescue.  That may be tomorrow or 2 or more weeks from now.  The call is john's.  Be ready.  Joe."

(7) On or about January 5, 2008, the defendant sent a facsimile to Glenda Morean-Phillip that stated, among other things:

> You are to immediately apologize by telephone call to the offended party.  It is very likely that failure to do so will be regretted. . . .  [I]n order to be able To go about your life in a secure and comfortable manner, . . . and without the need albeit imperfect for increased security and overwhelming expense, you must prove that the young woman is safe, acting only of her free will, and not being manipulated, controlled, or otherwise held against her free will. . . .  Basically, world news that you will not like can occur, or you can be wise and diplomatic.  John.

   2. Count Two:  18 U.S.C. § 878

Count Two of the indictment charged Jordan with knowingly and willfully, from on or about December 2007 up to and

5

including January 11, 2008, threatening by making telephone calls and sending emails and facsimiles to assault, strike, wound, imprison, offer violence to, violently attack, or make a violent attack on the private accommodation of Morean-Phillip, an internationally protected person, or threatening to seize or confine her, in violation of 18 U.S.C. § 878.  The statutory maximum term of imprisonment is three years.

The charge to the jury described the three elements of Count Two as follows:

> First: That in the period between December 2007 and up to and including January 11, 2008, the defendant threatened to assault, wound, imprison, offer violence to, violently attack the person of, or make a violent attack on the private accommodation of Glenda Morean-Phillip, or seize or confine Glenda Morean-Phillip.
>
> Second: That at that time Glenda Morean-Phillip was an internationally protected person.
>
> Third: That the defendant did so knowingly and willfully.

The five threats listed for Count Two are the final five threats identified for Count One.

### 3. Count Three:  18 U.S.C. § 2261A(2)

Count Three charged that from on or about December 5, 2007 up to and including December 17, 2007, Jordan willfully, knowingly and with intent to injure, harass, intimidate, or cause substantial emotional distress to a person in another State, and with intent to place a person in another State in

6

reasonable fear of the death of, or serious bodily injury to that person, or a member of the immediate family of that person, did use an interactive computer service and a facility of interstate and foeign commerce to engage in a course of conduct that did cause substantial emotional distress to that person and did place that person in reasonable fear of the death of, or serious bodily injury to that person or a member of the immediate family of that person, in violation of 18 U.S.C. § 2261A(2), by making threatening telephone calls and sending facsimiles and email messages that caused Thenault substantial emotional distress and that placed her in reasonable fear of the death of, and serious bodily injury to Thenault and members of her immediate family.  The statutory maximum term of imprisonment is five years.

The jury was charged that the elements of Count Three were as follows:

> First: That in the period between December 5, 2007 and up to and including December 17, 2007, the defendant used a facility of interstate commerce to engage in a course of conduct that caused substantial emotional distress to Ms. Thenault, or placed her in reasonable fear of death or serious bodily injury either for herself or a member of her immediate family.  The telephone is a facility of interstate commerce.
>
> Second: That in doing so, the defendant acted knowingly and with the intent to injure, harass, intimidate, or cause substantial emotional distress to Ms. Thenault, or to place Ms. Thenault in reasonable fear of her death or serious bodily

7

> injury or the death or serious bodily injury of a member of her immediate family.
>
> Third: That at the time the defendant so acted, he and Ms. Thenault were in different States of the United States.

4. Counts Four and Five:  18 U.S.C. 1512(b)

Counts Four and Five charged Jordan with willfully and knowingly using intimidation, threatening, or corruptly persuading, or attempting to do so, or engaging in misleading conduct with intent to influence, delay or prevent the testimony of a person in an official proceeding, or to cause or induce a person to withhold testimony from an official proceeding, in violation of 18 U.S.C. § 1512(b).  The statutory maximum term of imprisonment for each count is twenty years.

Count Four asserted that Jordan caused written communications containing intimidating, threatening, or misleading content to be sent to Thenault from at least in or about February 2008 up to and including at least June 2008 to influence or prevent Thenault's testimony at trial.  Count Five charged that from at least May 2008 up to and including June 2008, Jordan caused written communications containing intimidating, threatening, or misleading content to be sent to the government for which Morean-Phillip served as an internationally-protected person to influence or prevent her testimony at trial.

The jury was charged that the elements of Count Four were as follows:

> First: That during the period from February 2008 and up to and including June 2008, the defendant used intimidation, threatened, or corruptly persuaded Ms. Thenault, or attempted to do so, or engaged in misleading conduct toward Ms. Thenault.
>
> Second: That the defendant did so knowingly. . . .
>
> Third: That in doing so, the defendant also acted with the intent (1) to influence, delay, or prevent the testimony of Ms. Thenault in an official proceeding, <u>or</u> (2) to cause Ms. Thenault to withhold testimony from an official proceeding.

The jury was charged that the elements of Count Five were as follows:

> First: That during the period from May 2008 and up to and including June 2008, the defendant used intimidation, threatened, or corruptly persuaded Glenda Morean-Phillip, or attempted to do so, or engaged in misleading conduct toward the government of the Republic of Trinidad and Tobago.
>
> Second: That the defendant did so knowingly. . . .
>
> Third: That in doing so, the defendant also acted with the intent (1) to influence, delay, or prevent the testimony of Glenda Morean-Phillip in an official proceeding, <u>or</u> (2) to cause Glenda Morean-Phillip to withhold testimony from an official proceeding.

DISCUSSION

Jordan raises three legal challenges that affect the determination of the maximum term of imprisonment that may be imposed on the five counts on which he was convicted. He

contends that the maximum term of imprisonment on Counts Four and Five is less than the twenty years provided by 18 U.S.C. § 1512(b). He also contends that his conviction on Count One should be vacated because it is both duplicitous and multiplicitous.

1.  Section 1512(b) & (j):  Maximum Term of Imprisonment on Counts Four and Five

The defendant disagrees with the PSR's conclusion that the statutory maximum term of imprisonment for the offenses underlying Counts Four and Five is twenty years. Jordan asserts that the maximum terms of imprisonment are five years for Count Four and three years for Count Five, based on the maximum terms of imprisonment that apply to Counts Three and Two, respectively.

Section 1512(b) of Title 18 provides that anyone who engages in witness tampering proscribed by the statute "shall be fined under this title or imprisoned not more than <u>20 years</u>, or both." 18 U.S.C. § 1512(b)(emphasis supplied). Section 1512(j) further provides:

> If the offense under this section occurs in connection with a trial of a criminal case, the maximum term of imprisonment which may be imposed for the offense shall be <u>the higher of that otherwise provided by law</u> or the maximum term that could have been imposed for any offense charged in such case.

18 U.S.C. § 1512(j)(emphasis supplied).  The maximum term of imprisonment "otherwise provided by law" is the twenty years prescribed by 18 U.S.C. § 1512(b).  Where the maximum term of imprisonment for the underlying conduct that prompted the witness tampering exceeds twenty years, § 1512(j) requires a maximum sentence greater than the twenty years provided in § 1512(b).  United States v. Salazar, 542 F.3d 139, 146-48 (5th Cir. 2008) (where underlying offense carried a potential life sentence, defendant was subject to life sentence under § 1512(j)); United States v. Ruhbayan, 527 F.3d 107, 112 n.4 (4th Cir. 2007) (affirming life sentence imposed under § 1512(j)).

Jordan's motion essentially argues that, instead of increasing the maximum sentence that may be imposed, § 1512(j) decreases the maximum sentence that may be imposed when the charge that prompted the witness tampering carries a sentence less than the twenty year sentence that is available under § 1512(b).  Jordan cites no legal authority to support this reading, and the plain language of § 1512(j) does not support such a reading.

Nothing in § 1512(j) suggests that the maximum sentence described in § 1512(b) may be disregarded.  Moreover, § 1512(j) explicitly provides that the maximum sentence shall be "the higher" of that sentence which is otherwise provided by law or that sentence which could have been imposed for the offense

11

charged in the case. Jordan's reading is in conflict with the direction that the <u>higher</u> maximum sentence be imposed; under Jordan's reading, the lower maximum sentence would govern. Finally, Jordan's reading would make the phrase "the higher of that otherwise provided by law or" superfluous, a construction that is to be avoided. See <u>Jacobs v. N.Y. Foundling Hosp.</u>, 577 F.3d 93, 99 (2d Cir. 2009) ("It is 'a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'") (quoting <u>TRW Inc. v. Andrews</u>, 534 U.S. 19, 31 (2001)). While the concluding phrase in § 1512(j) clearly applies to the crimes charged in this case in Counts One through Three (that is, "any offense charged in such case"), Jordan's argument does not account for the reference to the maximum term of imprisonment "otherwise provided by law." The maximum sentence for Counts Four and Five is therefore that sentence provided by § 1512(b), or twenty years' imprisonment on each count.

B. Duplicity

Jordan contends that the conviction on Count One must be vacated since Count One charges multiple, distinct crimes, making it impermissibly duplicitous. At a minimum, he argues,

12

any sentence imposed on Counts One and Three must be imposed to run concurrently.  Jordan's application must be denied.  Count One describes a course of conduct and did not violate the law against duplicitous charges.

A charge is duplicitous "if it joins two or more distinct crimes in a single count."  United States v. Aracri, 968 F.2d 1512, 1518 (2d Cir. 1992).  "Duplicitous pleading, however, is not presumptively invalid."  United States v. Olmeda, 461 F.3d 271, 281 (2d Cir. 2006).  Indeed, a duplicitous charge may "inure to a defendant's benefit by limiting the penalties he might face if he were charged and convicted of separate counts for what amounts to a single scheme," and by avoiding the defendant's portrayal as the "perpetrator of multiple crimes."  Id. (citation omitted).

"An indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count . . . and 2) the defendant is prejudiced thereby."  United States v. Sturdivant, 244 F.3d 71, 75 (2d Cir. 2001) (citation omitted).  The doctrine of duplicity "must be invoked only when an indictment affects the policy considerations that underlie that doctrine," which include

> avoiding the uncertainty of whether a general
> verdict of guilty conceals a finding of guilty as to
> one crime and a finding of not guilty as to another,
> avoiding the risk that the jurors may not have been
> unanimous as to any one of the crimes charged,

13

>       assuring the defendant adequate notice, providing
>       the basis for appropriate sentencing, and protecting
>       against double jeopardy in a subsequent prosecution.
>       The identification of these considerations suggests
>       that a single count of an indictment should not be
>       found impermissibly duplicitous whenever it contains
>       several allegations that could have been stated as
>       separate offenses, but only when the failure to do
>       so risks unfairness to the defendant.  That risk is
>       slight in a case . . . where the essence of the
>       alleged wrong is [a] single scheme.

United States v. Margiotta, 646 F.2d 729, 732-33 (2d Cir. 1981) (citation omitted).  Thus, the Court of Appeals for the Second Circuit "has long held that acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme."  Olmeda, 461 F.3d at 281 (citation omitted).

Count One charges Jordan with communicating threats in violation of 18 U.S.C. § 875.  The charge to the jury identified seven different threats, any one of which the Government argued constituted a violation of the statute.  The jury was charged that "[t]o find the defendant guilty, you must unanimously agree on at least one threat identified by the Government for Count One that satisfies each of the elements of Count One."  These seven communications, sent by telephone, facsimile or email, were part of Jordan's single continuing scheme after Thenault fled from Jordan, by traveling first to her family in Virginia and then to her aunt in the United Kingdom.  Jordan was charged

14

with making the communications to Thenault, Thenault's sister and her mother, with whom she was staying in Virginia, and Thenault's aunt, who was residing in the United Kingdom.

Jordan has not identified any prejudice that he suffered because the seven threats were included within one count. Jordan complains that a special verdict form was not used to determine precisely on which of the threats the jury found him guilty.  Had a special verdict form been used, he argues, the jurors might not have unanimously agreed that he was guilty of any of the communications underlying Count One.  This argument fails.  The jury was specifically instructed as to the requirement of unanimity.  Jordan's contention that Count One was impermissibly duplicitous is rejected.

C.  Multiplicity

Finally, Jordan argues that the indictment also suffers from a related problem: multiplicity.  Jordan argues that Counts One and Two are multiplicitous and that the verdict on one of those two counts must be vacated, or at a minimum, their sentences must be imposed to run concurrently.

"An indictment is multiplicitous when a single offense is alleged in more than one count." United States v. Jones, 455 F.3d 134, 146 (2d Cir. 2006) (citation omitted).  Where a defendant "has violated two separate criminal statutes, whether

15

the defendant may be punished for both violations turns on whether the legislature intended to authorize separate punishments for the offensive conduct under separate statutes." United States v. Polouizzi, 564 F.3d 142, 158 (2d Cir. 2009). To determine whether counts are multiplicitous,

> we ask whether each count contains an element not contained in the other.  If so, the offenses are not the same offense for purposes of double jeopardy, and they can both be prosecuted.  If, however, either offense does not contain an element not contained in the other, the offenses are considered the same offense for double jeopardy purposes, and a defendant cannot be convicted of both.

United States v. White, 240 F.3d 127, 132 (2d Cir. 2001) (citation omitted).  A claim of multiplicity does not succeed "unless the charged offenses are the same in fact and in law." Jones, 455 F.3d at 146 (citation omitted).  "It is not the conduct that underlies the offense that matters for multiplicity, but rather the offense -- in the legal sense, as defined by Congress."  United States v. Ansaldi, 372 F.3d 118, 124 (2d Cir. 2004) (citation omitted).

"The primary problem [with multiplicitous counts] is that the jury can convict on both counts, resulting in two punishments for the same crime in violation of the Double Jeopardy Clause of the Fifth Amendment."  Id.  "The Double Jeopardy Clause of the Constitution forbids that any person be subject for the same offence to be twice put in jeopardy of life

16

or limb," United States v. McCourty, 562 F.3d 458, 472 (2d Cir. 2009) (citation omitted), which "protects against multiple punishments for the same offense." Polouizzi, 564 F.3d at 154 (citation omitted).

Counts One and Two, which charge violations of §§ 875 and 878 of Title 18, respectively, are not multiplicitous. While it is true that each of the five threats identified in the jury charge as a basis for Count Two was also among the seven threats listed as predicates for a violation of Count One, the necessary elements for the crimes charged in Counts One and Two differed in material ways. Count One required the jury to find that the threats were transmitted in interstate or foreign commerce, and did not require it to find that the threats were made to an internationally-protected person. Conversely, Count Two requires the latter and not the former. These two counts were not, therefore, multiplicitous.

Jordan argues that even when counts have different elements, they may still be multiplicitous, citing United States v. Liller, 999 F.2d 61, 63 (2d Cir. 1993), and United States v. Zvi, 168 F.3d 49, 57 (2d Cir. 1999). Liller undermines Jordan's argument. In Liller, the Second Circuit rejected a defendant's double jeopardy challenge to his conviction for two crimes arising from the same underlying conduct because each charge "requires proof of a fact not required for the other." 999 F.2d

17

at 63.  Likewise, Jordan's conviction of two separate offenses based on the same conduct does not violate the Double Jeopardy Clause because each offense required proof of a fact not required by the other.

Jordan's reliance on Zvi is inapposite.  In that case, the defendants were charged with both domestic and international money laundering.  The Second Circuit found that the only fact not common to both counts was the requirement in the international money laundering offense that the fund transfers be international.  It held that the charged offenses were multiplicitous because "the elements of one charged offense are subsumed within another charged offense."  Zvi, 168 F.3d at 57.  Since, as discussed above, none of the charges in this case contain elements entirely subsumed within another charge, Jordan's reliance on Zvi fails.

CONCLUSION

The statutory maximum terms of imprisonment that Jordan faced on each of the five counts of conviction were: five years for Count One; three years for Count Two; five years for Count Three; and twenty years for each of Counts Four and Five.  No counts posed any duplicity or multiplicity problems.  The Court was not required to impose sentence on Counts One and Two or One

and Three concurrently.  The statutory maximum term of imprisonment Jordan faced was fifty-three years.

SO ORDERED:

Dated:    New York, New York
          September 21, 2009

_____
DENISE COTE
United States District Judge